UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENIFER F.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

CASE NO. 3:25-cv-05037-JNW

ORDER REVERSING AND
REMANDING COMMISSIONER'S
DECISION

## 1. INTRODUCTION

Plaintiff Jenifer F. seeks judicial review of the Commissioner's denial of her application for disability insurance benefits under the Social Security Act. She contends that the administrative law judge ("ALJ") erred by (1) failing to give specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her multiple sclerosis; and (2) improperly evaluating the opinion of Plaintiff's treating neurologist, Dr. Stacy Donlon. The Court REVERSES and REMANDS the Commissioner's denial of benefits for further proceedings.

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 1

## 2.  LEGAL STANDARD

"Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence." *Elizabeth G. v. Comm'r of Soc. Sec.*, Case No. C24-2025-MLP, 2025 WL 1519230, at *1 (W.D. Wash. May 27, 2025) (citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation modified)). "In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings." *Id.*

The ALJ is responsible for resolving ambiguities in the medical evidence, and if the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Smartt*, 53 F.4th at 494; *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ."). Reversal is warranted only if the ALJ erred, and the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial

gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), she can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

### 3. BACKGROUND

Plaintiff applied for disability insurance benefits on October 30, 2020, alleging disability beginning July 22, 2019. AR 18. The claim was initially denied on June 22, 2022, and denied again upon reconsideration on November 23, 2022. A hearing was held on September 29, 2023, and the ALJ issued an unfavorable decision on January 18, 2024. The Appeals Council denied review on November 18, 2024. Plaintiff now seeks judicial review.

### 4. DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to give specific, clear and convincing reasons for discounting Plaintiff's testimony regarding the severity of her multiple sclerosis ("MS") and (2) improperly evaluating the opinion of Plaintiff's treating neurologist, Dr. Stacy Donlon. The Court agrees.

In evaluating a claimant's testimony, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 3

impairment reasonably expected to produce some degree of the symptoms alleged. *Id.* If so, and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing "specific, clear, and convincing reasons for the rejection." *Id.* (citation and internal quotations omitted). The Ninth Circuit has held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must *specifically identify* the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (emphasis added); *see also, Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (an ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony."); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

At the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 23–24. At the second step, the ALJ concluded that Plaintiff's limitations are not as limiting as she alleges and that she is able to sustain light exertional work. AR 26–27. The ALJ can only reject Plaintiff's testimony regarding the severity of her

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 4

symptoms if the ALJ makes specific findings stating clear and convincing reasons for doing so. Here, the ALJ did not.

As an initial matter, the ALJ fails to identify the specific symptom testimony he discredited. The decision refers to her symptoms in general terms as "multiple sclerosis symptoms and migraines" or simply as "claimant's symptoms." AR 27. *Smolen*, 80 F.3d at 1281 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). The Court construes the symptom testimony at issue as Plaintiff's testimony regarding her fatigue stemming from MS. The ALJ's reasons for discounting that testimony can be categorized as: (1) Plaintiff had success with medication and had no new or active demyelinating lesions; (2) Plaintiff exhibited "normal" physical examination findings; and (3) Plaintiff could carry on with activities in her personal life that negated the severity of her MS. None of these reasons provide a specific, clear and convincing basis for rejecting Plaintiff's testimony about her fatigue.

First, the fact that Plaintiff had some success with medication and no new or active demyelinating lesions does not rebut Plaintiff's fatigue testimony. Plaintiff testified that although her medication helped relieve certain symptoms, such as her headaches, her fatigue remained unchanged—she still requires intermittent breaks and naps. AR 68–71, 622, 875–82.

The Commissioner argues that "[s]uch evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). But the records the ALJ relied on to find that Plaintiff "had success with medication" are irrelevant to Plaintiff's fatigue

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 5

testimony. AR 26–27. The ALJ cites "1F/27-28" and "10F64." However, 10F/64 does not state that Plaintiff had success with medication, only that Plaintiff reported "feeling better than she was last week." AR 646. And 1F/27–28 states that a "headache cocktail" helped resolve Plaintiff's "current migraine." AR 302. These records only address Plaintiff's headache symptoms, not her fatigue, and they do not contradict her fatigue testimony.

As for the imaging records showing "no new or active demyelinating lesions," the stability of Plaintiff's MS does not rebut her fatigue testimony. "[A]n impairment, though stable, can still be disabling." *Banua v. Colvin*, No. SA CV 12-0804 JCG, 2013 WL 1855802, at *1 (C.D. Cal. Apr. 30, 2013); *see also, Brian P. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00232-JTR, 2019 WL 2330891, at *4 (E.D. Wash. May 31, 2019) (noting that "improvement is not the same as the elimination of symptoms"); *Jones v. Berryhill*, No. 3:15-CV-00539-JE, 2017 WL 980554, at *10 (D. Or. Mar. 13, 2017) ("[E]ven assuming plaintiff's treatment course was stable, the record does not reflect that she was pain-free, or, more importantly, that her testimony exaggerated the severity of her symptoms."). The ALJ does not explain how stable imaging conflicts with Plaintiff's testimony. And Plaintiff never alleged that her condition was worsening, so the absence of new lesions is not a point of contradiction. Dkt. No. 13 at 3.

Second, the ALJ concluded that the severity of Plaintiff's MS is undermined by her otherwise normal exam findings, including intact cranial nerves, normal cerebellar testing, normal gait, sensation and strength, intact judgment and memory, and normal mood and affect. AR 27. But the ALJ does not establish how

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 6

these findings pertain to Plaintiff's fatigue. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (it is improper for an ALJ to "cherry-pick" from medical evidence rather than evaluating the evidence in its entirety); *see also, Mary Y. v. Comm'r of Soc. Sec.*, No. C22-5050-MLP, 2022 WL 2208173, at *2 (W.D. Wash. June 21, 2022).

Third, the ALJ's conclusion that Plaintiff's daily functioning is consistent with the RFC is devoid of key context and mischaracterizes the record.

The ALJ concluded that:

> The claimant asserts that she manages her own finances, shops in stores and online, wipes counters, does laundry, washes dishes, and prepares quick and easy meals (5E). She also asserts that she spends her time coloring, painting, playing games on her phone, and racing R.C. cars (5E). The claimant reported to her provider that she was homeschooling her children (10F/38). The claimant reported she does not require any specific assistance, takes care of her children, aged six and nine, cooks, and cleans (6F/2). The claimant reported performing her own self-care activities at her own pace, does light household chores and cooking, goes shopping, walks the dog, and paints for up to an hour (7F/4). This evidence strongly indicates that the claimant's symptoms are not as limiting as alleged.

AR 27.

What is missing from this recitation is the frequency and degree to which Plaintiff performed these activities without needing breaks and naps. In her function report, dated March 21, 2021, Plaintiff listed "coloring, painting, R.C. cars, playing games on my phone" under hobbies and interests. AR 237. Yet in the same report, she stated that she cannot stand longer than ten minutes to make a meal, that she engages in household chores ranging from five minutes to twenty minutes, that she mostly shops online or in-person with her sister's help, and that she cannot walk more than half a mile without breaks. AR 233–38. At the hearing, Plaintiff

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 7

testified that she would need to nap at random times during the day to complete basic chores. AR 69.

The ALJ's conclusion that Plaintiff "does not require any specific assistance, takes care of her children, aged six and nine, cooks, and cleans" is directly rebutted by Plaintiff's hearing testimony that her boyfriend and sister provide significant assistance with making dinner or transporting her children to and from school and afterschool activities. AR 70. She also testified that she relies on her boyfriend and sister for driving-dependent tasks because her eyesight has weakened due to her MS. *Id.* Her parenting activities, when unassisted, are limited: "we watch movies, read books, play board games, and that's pretty much my limitations." AR 71. As for homeschooling her children, this appears only once in the record, and the same treatment note indicates that the experience worsened Plaintiff's condition. AR 620. An ALJ may not "cherry-pick[ ]" from the medical evidence but must evaluate the record "in context." *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

The ALJ's reliance on Plaintiff's daily living activities to discredit her testimony fails for another reason—the ALJ does not draw a connection between the reported activities and Plaintiff's ability to sustain full-time work. The Ninth Circuit has made clear that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). In *Vertigan,* the Ninth Circuit rejected the ALJ's reliance on the plaintiff's ability to grocery shop alone, walk for an hour in the mall, play cards, swim, watch television, and read as

inconsistent with plaintiff's claims of pain, especially when those activities did not consume a "substantial part" of plaintiff's day. *Id*. Here, the record indicates that Plaintiff completes similar daily activities at her own pace, with intermittent breaks and naps, and with significant help from her boyfriend and sister. These are not activities performed at a level that would transfer to sustained, competitive employment.

The ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's fatigue symptom testimony. Because the ultimate disability determination may have changed with proper consideration of Plaintiff's testimony, the ALJ's error is not harmless and requires reversal. And because the ALJ relied on the same flawed rationale in rejecting Dr. Donlon's opinion as he did in discounting Plaintiff's subjective symptom testimony, the Court will not go further in its analysis of this issue. AR 28–29.

## 5. CONCLUSION

This Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this Order. On remand, the ALJ must reevaluate Dr. Donlon's opinion and Plaintiff's testimony, reconsider at Step Three whether Plaintiff's impairments meet or equal a listed impairment, develop the record and redetermine RFC as needed, and proceed to Step Five as necessary. The Clerk is DIRECTED to enter judgment for Plaintiff and close this case.

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 9

Dated this 18th day of February, 2026.

Jamal N. Whitehead
United States District Judge